IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI (CENTRAL DIVISION)

| | |
|---|---|
| GALEN SUPPES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 2:18-cv-04230-MDH |
| | ) |
| ELIZABETH LOBOA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS GATEHOUSE MEDIA, LLC AND RUDI KELLER FOR LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

Plaintiff Galen Suppes ("Plaintiff" or "Suppes") filed this lawsuit against the University of Missouri ("University") and other defendants associated with the University (collectively, "University Defendants") alleging violation of his constitutionally-protected rights in connection with actions they took against him during and after his employment with the University. With his claims against the University Defendants, Plaintiff joined state law claims for defamation against GateHouse Media, LLC, the owner of The Columbia Tribune, and Rudi Keller, a reporter for the newspaper, (collectively, "GateHouse Defendants"), complaining about statements in a newspaper article about a successful lawsuit the University brought against Plaintiff.

As discussed more fully below, Plaintiff's state-law claims against the GateHouse Defendants have no independent basis for subject matter jurisdiction under 28 U.S.C. §§ 1331 or 1332, nor do they have sufficient relation to the federal claims asserted against the University Defendants to permit supplemental jurisdiction under 28 U.S.C. § 1367. Consequently, they should be dismissed pursuant to Fed. R. Civ .P. 12(b)(1) for lack of subject matter jurisdiction.

2307269.4

Alternatively, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), in that the state claims against the Gatehouse Defendants for libel and defamation substantially predominate over the federal claims asserted against the University Defendants, and compelling reasons exist for declining to exercise jurisdiction of such claims.

## BACKGROUND

Beginning in August 2001, Suppes was a professor in the Chemical Engineering Department at the University. (First Am. Complt. ¶28). He was fired on May 25, 2017. (*Id.* ¶29). During Suppes' tenure, "disputes and animosity" arose between him and the University over his research, the handling of patentable intellectual property, and treatment by the University which he considered unfair and "unevenly applied." (*Id.* ¶44). This animosity produced several lawsuits (*id.* ¶¶19-26), including a lawsuit the University filed in January 2009 involving Suppes' handling of patentable intellectual property (*id.* ¶¶43, 47), which Suppes lost on September 6, 2017 (*id.* ¶30) ("University Lawsuit").

In his Counts against the University Defendants, Suppes alleges that their actions during and since his employment and during the various lawsuits violated his constitutionally-protected rights, including rights guaranteed by the First, Fifth, and Fourteenth Amendments. He also alleges civil conspiracy, and "restraint of trade with substantial patent law component." Jurisdiction against the University Defendants is premised on 28 U.S.C. § 1338(b) (patent dispute), 28 U.S.C. § 1343(a)(3) (civil rights) and 42 U.S.C. § 1983 (civil rights). (First Am. Complt. ¶14).

Suppes claims against the GateHouse Defendants are premised on a news article the Columbia Tribune published reporting on Plaintiff's loss in the University Lawsuit. (*Id.* ¶252). Suppes alleges, among other things, that the article wrongfully accused Suppes of undermining business interests of Senergy, a company he worked with to commercialize some of his inventions,

and that the statements defamed him in the eyes of companies considering hiring or collaborating with him. (*Id.* ¶¶259-60). The complained-of statements are set forth below:

> i. *Suppes also sought to market the process to Senergy's competitors, including Dow Chemical, and claimed that a firm he created, Renewables Associates, owned all the intellectual property rights to the process. "What in the world would made him think that was OK?" Jones asked.*
>
> ii. *The university pays the cost of patenting the invention.*

(*Id.* ¶252). Suppes claims libel (Count XXI), defamation (Count XXII), and he seeks an injunction ordering the GateHouse Defendants to publish a retraction (Count XXXI).

## ARGUMENT

**I. PLAINTIFF'S STATE LAW CLAIMS AGAINST THE GATEHOUSE DEFENDANTS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.**

"[J]urisdiction is a threshold question and must be answered before all other questions." *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010). As stated by this Court in previous litigation involving this same Plaintiff:

> "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal courts retain the power to hear cases only if authorized to do so by both the Constitution and by statute. *Id*. When a party seeks federal court jurisdiction over a matter, the party asserting jurisdiction has the burden of proving that the federal court has the power to hear the case. *Id*. If a federal court lacks jurisdiction over the subject matter of the case, "it must dismiss the action." Fed. R. Civ. P. 12(h)(3).

*Suppes v. Katti*, No. 2:16-CV-04235-MDH, 2016 WL 6090971, at *1 (W.D. Mo. Oct. 18, 2016), aff'd. 710 F. App'x 883 (Fed. Cir. 2017); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 913 (8th Cir. 2016). When a defendant raises a jurisdictional objection, it is the plaintiff's burden to plead and prove jurisdiction. *Kokkonen*, 511 U.S. at 377.

### A. There is no independent basis for subject matter jurisdiction over the claims against the GateHouse Defendants under 28 U.S.C. §§ 1331 (federal question) or 1332 (diversity).

Plaintiff cannot meet his burden of proving an independent basis for asserting jurisdiction over his state-law claims against the GateHouse Defendants. Under Article III of the Constitution, the subject matter jurisdiction of federal courts is limited to "cases or controversies." *See In re SuperValu, Inc.*, 870 F.3d 763, 767-68 (8th Cir. 2017). Original jurisdiction may be based on either a federal question (28 U.S.C. § 1331) or diversity of citizenship (28 U.S.C § 1332). A plaintiff properly invokes § 1331 federal question jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. *Arbaugh,* 546 U.S. at 513 (citing *Bell v. Hood*, 327 U.S. 678 (1946)). A plaintiff properly invokes § 1332 diversity jurisdiction when there is "complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)).

Here, Plaintiff does not assert a basis for jurisdiction under § 1331 (federal question) or § 1332 (diversity) for his state law claims against the GateHouse Defendants independent of the federal question jurisdiction that purportedly supports Plaintiff's federal claims against the University Defendants.

### B. Plaintiff's claims against the GateHouse Defendants do not "derive from a common nucleus of operative fact" as the federal claims asserted against the University Defendants, and, as such, there is no basis for supplemental jurisdiction under 28 U.S.C. § 1367.

Presumably, Plaintiff will argue this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims against the GateHouse Defendants. However, in order to establish supplemental jurisdiction, the Eighth Circuit has stated "the claims within the action must derive from a common nucleus of operative fact." *Auto–Owners Ins. Co. v. Tribal Court of Spirit*

*Lake Indian Reservation*, 495 F.3d 1017, 1024 (8th Cir. 2007) (internal punctuation, brackets and quoted case omitted).  A plaintiff's claims derive from a common nucleus of operative fact if the "claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Herbst v. Ressler & Assocs., Inc.*, No. 4:13-CV-2327 CAS, 2014 WL 4205294, at *3 (E.D. Mo. Aug. 22, 2014) (citing *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007)). A federal court can exercise supplemental jurisdiction only where the state claims arise out of the same incidents and address the same course of conduct as the underlying federal claim.  *Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998).  Further, "[t]he district courts can decline to exercise pendent jurisdiction over such claims in the interests of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 158 (1997).  In deciding whether to exercise supplemental jurisdiction, courts consider factors such as "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *Id*. at 173.

Plaintiff alleges that "[a]ll counts have common and inseparable actions related to the handling of patentable intellectual property ("IP") at the University."  (First Am. Complt. at p. 1). As for the GateHouse Defendants, however, nothing could be further from the truth.  The GateHouse Defendants were not involved in any of the patent or employment issues that prompted this lawsuit against the University Defendants or the University Lawsuit that Plaintiff lost.  Nor did they act jointly or in concert with any of the University Defendants related to such matters. All they did was report on such matters—all of which were undeniably newsworthy.  As such, there is no discernable overlap between the operative facts underlying the federal claims against the University Defendants, which are at the heart of this litigation, and the operative facts underlying the state law claims.  *Franklin*, 152 F.3d at 786.

5

Plaintiff's state-law claims against the GateHouse Defendants are not sufficiently related to Plaintiff's federal claims against the University Defendants to "form part of the same case or controversy" required under §1367(a).  Plaintiff's claims against the University Defendants arise from issues during his employment, circumstances following his termination from the University, and facts related to the University Lawsuit over intellectual property and patent rights.  In his Complaint, Suppes alleges the University violated his First Amendment rights because it declared he "no longer had any right" to be on campus.  (First Am. Complt. ¶50).  His Fifth and Fourteenth Amendment Due Process claims are based on the alleged failure of the University to provide notice of a hearing or appeal in the process of taking away his rights as a civilian to participate in allowed campus extracurricular activities.  Moreover, the underlying facts related to Plaintiff's civil conspiracy claims allege multiple University representatives created a "premeditated, unnecessary, and escalated infliction of harm" against Suppes in the work environment and during his termination of employment.  (First Am. Complt. ¶158).

These federal claims against the University Defendants are factually distinct from Plaintiffs' state law claims against the GateHouse Defendants, and present completely separate legal questions.  Plaintiff alleges the GateHouse Defendants committed libel and defamed his character in reporting the outcome of the University Lawsuit in September 2017.  He alleges that the GateHouse Defendants' newspaper article wrongfully presented Plaintiff as undermining business interest of Senergy, a company he worked with to commercialize some of his inventions. These are substantially different claims than his federal claims because they raise issues regarding Missouri libel law and Missouri's fair reporting privilege, rather than the deprivation of Plaintiff's constitutional rights.  Under the fair reporting privilege, "reports of legislative, judicial or executive proceedings and the statements made therein, are subject to a qualified privilege."

*Kenney v. Scripps Howard Broad. Co.*, 259 F.3d 922, 923 (8th Cir. 2001) (citing *Spradlin's Market, Inc. v. Springfield Newspapers, Inc.*, 398 S.W.2d 859, 864 (Mo. 1966)). This privilege can only be overcome if the matters published were not a "fair and accurate" report or abridgement of such proceedings. *Kenney*, 259 F.3d at 924. This legal standard clearly raises separate legal questions and requires proof of facts dissimilar to the ones at play under Plaintiff's federal claims against the University Defendants.

In sum, Plaintiff's state law claims against the GateHouse Defendants lack any independent basis for this Court's exercise of jurisdiction, and they have an insufficient relationship to the federal claims asserted against the University Defendants to permit supplemental jurisdiction under 28 U.S.C. § 1367. Consequently, the claims against the GateHouse Defendants should be dismissed.

II. **PLAINTIFF'S CLAIMS AGAINST THE GATEHOUSE DEFENDANTS SHOULD BE DISMISSED PURSUANT TO 28 U.S.C § 1367(c) BECAUSE THE STATE CLAIMS FOR DEFAMATION SUBSTANTIALLY PREDOMINATE OVER THE FEDERAL CLAIMS ASSERTED AGAINST THE UNIVERSITY DEFENDANTS, AND COMPELLING REASONS EXIST FOR DECLINING TO EXERCISE JURISDICTION OF SUCH CLAIMS.**

Even if this Court holds that a sufficient nexus exists between the claims asserted against the University Defendants and the GateHouse Defendants to legally support supplemental jurisdiction, it should exercise its discretion to deny such jurisdiction and dismiss the claims against the GateHouse Defendants. A federal court may decline to exercise supplemental jurisdiction where (1) the state claim raises a novel or complex issue of state law, (2) the state claim substantially predominates over the claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) other compelling reasons for declining jurisdiction exist. 28 U.S.C. § 1367(c); *see Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 931–32 (8th Cir. 2016). Compelling reasons

include judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). As stated by the Supreme Court:

> Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims.

*Id.* at 173.

Here, as pointed out in the prior argument, state law, including the defense of the privilege to report on court proceedings, predominate as to the claims against the GateHouse Defendants. In fact, all the constitutional violations and patent claims alleged against the University Defendants have no relevance whatsoever to the defamation allegedly resulting from the GateHouse Defendants' news article. The relevant and predominant issues in the claim against the GateHouse Defendants are whether the news article was false, whether it was a fair report of the court proceedings and whether Plaintiff was damaged by the complained about statements. Moreover, it would be abundantly unfair and inconvenient to require the GateHouse Defendants to participate in litigation where the issues mainly revolve around the University Defendants' treatment of Plaintiff that occurred over the course of several years and patent issues having no relevance to the claims asserted against the GateHouse Defendants.

## **CONCLUSION**

Plaintiff's state law claims lack the requisite subject matter jurisdiction to be heard by this Court, and there is no legal or practical justification for this Court to exercise supplemental jurisdiction. For these and all the foregoing reasons, Defendants GateHouse Media, LLC and Rudi Keller respectfully request this Court enter an Order dismissing Count XXI, Count XXII and Count XXXI against Gatehouse and Keller in their entirety.

Dated: January 8, 2019                    Respectfully submitted,

**LEWIS RICE LLC**

By:    */s/ Joseph E. Martineau*
       Joseph E. Martineau, MO #32397
       600 Washington, Suite 2500
       St. Louis, MO 63101
       Tel: (314) 444-7729
       Fax: (314) 241-7729
       E-Mail: jmartineau@lewisrice.com

By:    */ s / Scott A. Wissel*
       Scott A. Wissel, MO #49085
       1010 Walnut, Suite 500
       Kansas City, MO 64106
       Tel: (816) 421-2500
       Fax: (816)472-2500
       E-Mail: sawissel@lewisrice.com

*Attorneys for Defendants*
*GateHouse Media, LLC and Rudi Keller*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and accurate copy of the foregoing document was served upon Plaintiff Galen Suppes, via electronic mail to suppesg@mediacombb.net and also electronically to him and all other parties to this action by filing with the Clerk of the Court using the CM/ECF system which sent notification by operation of the Court's electronic filing system this 8th day of January, 2019.

By: */s/ Joseph E. Martineau*